# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

## MOTION INFORMATION STATEMENT

**Docket Number(s):** 19-3574 _____      _____ Caption [use short title] _____

**Motion for:** Leave to File Amici Curiae Brief In Support of
Defendant-Appellee
_____

_____

Set forth below precise, complete statement of relief sought:

The Reporters Committee for Freedom of the Press

and 21 media organizations seek leave to file amici

curiae brief in support of Defendant-Appellee.

La Liberte v. Reid

_____

_____

_____

**MOVING PARTY:** The Reporters Committee at 21 media organizations _____      **OPPOSING PARTY:** _____

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** Bruce D. Brown _____      **OPPOSING ATTORNEY:** _____

[name of attorney, with firm, address, phone number and e-mail]

Reporters Committee for Freedom of the Press _____     _____

1156 15th St. NW, Suite 1020, Washington, DC 20005 _____     _____

(202) 795-9300 _____     _____

Court- Judge/ Agency appealed from: Eastern District of New York, the Honorable Dora L. Irizarry _____

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☐ Unopposed   ☐ Opposed   ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☐ No   ☑ Don't Know

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

_____
_____
_____
_____

**Signature of Moving Attorney:**

/s/ Bruce D. Brown _____  **Date:** February 19, 2020   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

# No. 19-3574

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

ROSLYN LA LIBERTE,

*Plaintiff-Appellant*,

v.

JOY REID,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Eastern District of New York
Case No. 1:18-cv-05398-DLI, Hon. Dora L. Irizarry

## MOTION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 21 MEDIA ORGANIZATIONS FOR LEAVE TO FILE AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANT-APPELLEE

Bruce D. Brown, Esq.
*Counsel of Record*
Katie Townsend, Esq.
THE REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
(202) 795-9300
bbrown@rcfp.org

The Reporters Committee for Freedom of the Press and twenty-one media organizations (collectively, "amici") move for leave to file the attached amicus brief in support of Defendant-Appellee Joy Reid pursuant to Federal Rule of Appellate Procedure 29(a)(3).[1] Defendant-Appellee Reid consented to the filing of the amici brief. Amici contacted counsel for Plaintiff-Appellant Roslyn La Liberte to request his client's position on the filing of the amici brief; as of the filing of this motion, counsel for Plaintiff-Appellant Roslyn La Liberte has not provided his client's position.

A motion for leave to file an amicus brief "must be accompanied by the proposed brief and state: (A) the movant's interest; and (B) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(a)(3). Amici's proposed brief is included as an Exhibit to this motion.

The amici brief addresses the applicability of the fee-shifting and motion-to-strike provisions of California's "anti-SLAPP" statute in federal court and will aid the Court by providing amici's expertise on this issue, which affects news organizations across the country. Strategic lawsuits against public participation ("SLAPPs") are suits designed not to prevail on the merits of a claim, but rather to

---

[1]    A list of all amici, a supplemental statement of identity and interest of amici, and corporate disclosure statements for all amici are included in the attached amicus brief.

1

harass the defendant and inhibit constitutionally protected speech.  As members and representatives of the news media, amici are frequent targets of SLAPPs aimed at punishing and deterring their reporting on matters of public concern.  Amici therefore have a strong interest in ensuring the proper application of state anti-SLAPP laws in federal court.  The fee-shifting provisions of state anti-SLAPP laws are especially important, because fee-shifting is the only way to thwart one of the primary purposes of a SLAPP—imposing costs on the defendant.  If this Court reverses the district court and holds that the fee-shifting provision of California's anti-SLAPP statute does not apply in federal court, it could lead to a surge in frivolous suits against media organizations in this Circuit.  This result would chill legitimate reporting and undermine journalists' efforts to carry out their constitutional role of informing the public.

The amici brief explains that the Court must consider the fee-shifting and motion-to-strike provisions of the California anti-SLAPP statute separately when determining their applicability in federal court and that only the fee-shifting provision is at issue in this case.  Amici argue that the Court should hold that the fee-shifting provision applies in federal court, marshaling precedent not only from anti-SLAPP cases but also from other areas of the law where courts have held that state fee-shifting provisions apply in federal court.  If the Court reaches the issue of whether the motion-to-strike provision applies in federal court, amici urge the

Court to follow precedent from this Circuit and the United States Court of Appeals for the Ninth Circuit in holding that it does.

For these reasons, amici respectfully request leave to file the attached amicus brief in support of Defendant-Appellee.

Dated: February 19, 2020    Respectfully Submitted,

/s/ Bruce D. Brown
Bruce D. Brown, Esq.
*Counsel of Record*
Katie Townsend, Esq.
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system with a resulting electronic notice to all counsel of record on February 19, 2020.

Dated: Feb. 19, 2020

By: */s/ Bruce D. Brown*

Bruce D. Brown
*Counsel for Amici Curiae*

# EXHIBIT 1

# No. 19-3574

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

ROSLYN LA LIBERTE,

*Plaintiff-Appellant*,

v.

JOY REID,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Eastern District of New York
Case No. 1:18-cv-05398-DLI, Hon. Dora L. Irizarry

## BRIEF OF *AMICI CURIAE* THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 21 MEDIA ORGANIZATIONS IN SUPPORT OF DEFENDANT-APPELLEE SEEKING AFFIRMANCE

Bruce D. Brown, Esq.
 *Counsel of Record*
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
Katie Townsend, Esq.
1156 15th St. NW, Suite 1020
Washington, DC 20005
(202) 795-9300
bbrown@rcfp.org

# CORPORATE DISCLOSURE STATEMENT

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

ALM Media, LLC is privately owned, and no publicly held corporation owns 10% or more of its stock.

The Associated Press is a global news agency organized as a mutual news cooperative under the New York Not-For-Profit Corporation law. It is not publicly traded.

BuzzFeed Inc. is a privately owned company, and National Broadcasting Company (NBC) owns 10% or more of its stock.

California News Publishers Association ("CNPA") is a mutual benefit corporation organized under state law for the purpose of promoting and preserving the newspaper industry in California. No entity or person has an ownership interest of ten percent or more in CNPA.

Californians Aware is a nonprofit organization with no parent corporation and no stock.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

First Look Media Works, Inc. is a non-profit non-stock corporation organized under the laws of Delaware. No publicly-held corporation holds an interest of 10% or more in First Look Media Works, Inc.

Gannett Co., Inc. is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

The Investigative Reporting Workshop is a privately funded, nonprofit news organization based at the American University School of Communication in Washington. It issues no stock.

The Media Institute is a 501(c)(3) non-stock corporation with no parent corporation.

MPA - The Association of Magazine Media has no parent companies, and no publicly held company owns more than 10% of its stock.

The National Freedom of Information Coalition is a nonprofit organization that has not issued any shares or debt securities to the public, and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

National Press Photographers Association is a 501(c)(6) nonprofit organization with no parent company. It issues no stock and does not own any of the party's or amicus' stock.

The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

The News Leaders Association has no parent corporation and does not issue any stock.

POLITICO LLC's parent corporation is Capitol News Company. No publicly held corporation owns 10% or more of POLITICO LLC's stock.

Reveal from The Center for Investigative Reporting is a California non-profit public benefit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no statutory members and no stock.

The Society of Environmental Journalists is a 501(c)(3) non-profit educational organization. It has no parent corporation and issues no stock.

Society of Professional Journalists is a non-stock corporation with no parent company.

Univision Communications Inc. is wholly owned by Broadcast Media Partners Holdings, Inc., which is wholly owned by Univision Holdings, Inc. Grupo Televisa, S.A.B. indirectly holds a 10% or greater ownership interest in the stock of Univision Holdings, Inc. No publicly held company owns 10% or more of Univision Communications Inc. or any of its parent companies, subsidiaries, or affiliates.

Vox Media, LLC has no parent corporation. NBCUniversal Media, LLC, a publicly held corporation, owns at least 10% of Vox's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................... C-1

TABLE OF AUTHORITIES ................................................................ iii

IDENTITY AND INTEREST OF *AMICI CURIAE* ..................................... 1

SOURCE OF AUTHORITY TO FILE ....................................................... 2

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................... 3

ARGUMENT ...................................................................................... 7

   I.   The fee-shifting provision of California's anti-SLAPP law applies in federal court. ......................................................................... 7

      A.    The fee-shifting provision does not conflict with the Federal Rules. ..................................................................... 8

      B.    The fee-shifting provision is substantive under *Erie*. .............. 10

      C.    This Court and its sister circuits have held that state anti-SLAPP fee-shifting provisions apply in federal courts sitting in diversity. ........................................................................ 11

   II.   The Court need not decide whether California's anti-SLAPP motion-to-strike provision applies in federal court; the fee-shifting provision of California's anti-SLAPP law applies in federal court regardless of whether the motion-to-strike provision does. ................................... 15

      A.    The Court must analyze the fee-shifting provision independently from the motion-to-strike provision to determine whether it applies in federal court. ........................................... 16

      B.    The California anti-SLAPP law does not require that the motion-to-strike and fee-shifting provisions be applied together. ................................................................. 18

   III.  Though the Court need not decide whether California's anti-SLAPP motion-to-strike provision applies in federal court, if the Court reaches that question, it should hold that it does. ............................... 19

      A.    This Court's precedent suggests that the California anti-SLAPP law's motion-to-strike provision applies in federal court. ........ 19

      B.    The California anti-SLAPP's motion-to-strike provision does not conflict with the Federal Rules. ......................................... 21

C.     The California anti-SLAPP's motion-to-strike provision is substantive under *Erie*. .......................................................... 23

D.     This Court should decline to follow the analysis of other federal circuit courts that have concluded that state anti-SLAPP dismissal provisions do not apply in federal court. ................. 24

CONCLUSION ....................................................................................... 27

CERTIFICATE OF COMPLIANCE ......................................................... 28

APPENDIX A ...................................................................................... A-1

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) ....... 13, 24, 25

*Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014) ................................................ *passim*

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) ............. 5, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 4

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) ... 23, 24, 25

*Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206 (2d Cir. 1987) .............. 14

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ................................ 22

*Cotton v. Slone*, 4 F.3d 176 (2d Cir.1993) .......................................................... 5, 14

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1838) ........................................................ 7

*Ernst v. Carrigan*, 814 F.3d 116 (2d Cir. 2016) ..................................................... 15

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ................................... 7

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) .................................. 11, 13, 22, 24

*Hannah v. Plumer*, 380 U.S. 460 (1965) ................................................................... 7

*Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009) .................. 24

*Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) ....................................... 19, 24, 25

*Liberty Synergistics Inc v. Microflo Ltd.*, 637 Fed. App'x 33 (2d Cir. 2016) ........ 15

*Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138
(2d Cir. 2013) ...................................................................... 10, 20, 23

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ............................................... 24

*Makaeff v. Trump University, LLC*, 736 F.3d 1180 (9th Cir. 2013) ........... 13, 22, 25

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ............................ 17

*People of Sioux Cty. v. Nat'l Surety Co.*, 276 U.S. 238 (1928) .............................. 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010). ..................................................... *passim*

*Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019) ............................................. 9

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir.1999) ............................................ *passim*

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) ................................................ 8

**Statutes**

Cal Civ. Proc. Code § 425.16 ........................................................ *passim*

Tex. Civ. Prac. & Rem. Code § 27.009 ................................................. 19

**IDENTITY AND INTEREST OF *AMICI CURIAE***

*Amici curiae* are The Reporters Committee for Freedom of the Press, ALM Media, LLC, The Associated Press, BuzzFeed, California News Publishers Association, Californians Aware, The E.W. Scripps Company, First Look Media Works, Inc., Gannett Co., Inc., Investigative Reporting Workshop at American University, The Media Institute, MPA - The Association of Magazine Media, National Freedom of Information Coalition, National Press Photographers Association, The New York Times Company, The News Leaders Association, POLITICO LLC, Reveal from The Center for Investigative Reporting, Society of Environmental Journalists, Society of Professional Journalists, Univision Communications Inc., and Vox Media, LLC.  A supplemental statement of identity and interest of *amici* is included below as Appendix A.[1]

As members and representatives of the news media, amici are frequently the targets of strategic lawsuits against public participation ("SLAPPs") designed to punish and deter their constitutionally protected newsgathering and reporting activities.  Even with no hope of prevailing on the merits, plaintiffs who file

---

[1]     Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) and Local Rule 29.1(b), *amici* declare that (1) no party's counsel authored the brief in whole or in part; (2) no party or party's counsel contributed money intended to fund preparing or submitting the brief; and (3) no person, other than *amici*, their members, or their counsel, contributed money intended to fund preparing or submitting the brief.

SLAPPs impose costs and discourage the exercise of First Amendment rights. Amici therefore have a strong interest in ensuring that federal courts sitting in diversity properly apply state statutes intended to prevent these frivolous suits from chilling speech. Plaintiff-Appellant's arguments that the motion-to-strike and fee-shifting provisions of California's anti-SLAPP statute should not apply in federal court have potentially broad ramifications for amici—and for the free exchange of ideas in our democratic society.

## SOURCE OF AUTHORITY TO FILE

Amici have moved for leave to file this brief in the accompanying motion pursuant to Federal Rule of Appellate Procedure 29(a)(3).

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Our system of self-governance depends on open debate among an informed public. But a surge in strategic lawsuits against public participation, or "SLAPPs," threatens the marketplace of ideas. Even when the plaintiffs have little hope of winning on the merits, SLAPPs draw their targets into vexingly time-consuming and costly litigation, thereby deterring valuable speech on matters of public concern. Would-be speakers are forced into a perverse cost-benefit analysis, weighing the value of participating in the public square against the burden of defending against a lawsuit. Likewise, SLAPPs can hamper the ability of the press to deliver the news, with the specter of frivolous suits hanging ominously over their newsgathering and reporting activities. To combat this troubling trend, thirty states and the District of Columbia have passed anti-SLAPP laws.

California's anti-SLAPP statute seeks to "encourage continued participation in matters of public significance" in the face of "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal Civ. Proc. Code § 425.16(a). A defendant facing a suit based on an act in furtherance of his right of free speech or petition may bring a "special motion to strike," which requires the plaintiff to establish "a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1) (hereinafter "the motion-to-strike provision"). And

the statute entitles a prevailing defendant to recover attorney's fees and costs, eliminating the financial incentive to file SLAPPs as tools of harassment. Cal. Civ. Proc. Code § 425.16(c)(1) (hereinafter "the fee-shifting provision").

In this case, Plaintiff-Appellant sued Defendant-Appellee over two social media posts. JA037. Because the lawsuit was without merit, Defendant-Appellee: (i) moved the court to dismiss the suit for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), JA264; (ii) moved to strike under the California anti-SLAPP statute, JA264; Cal. Civ. Proc. Code § 425.16(b)(1); and (iii) moved the court to award reasonable attorney's fees. JA264; Cal Civ. Proc. Code § 425.16(c)(1). The district court addressed Defendant-Appellee's motion to strike alongside her motion to dismiss under Federal Rule 12(b)(6), applying the same federal "plausibility" standard to both motions. JA268. The district court dismissed the action because Plaintiff-Appellant had not stated any claim for which the court could plausibly grant relief. *See* JA272–77; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The district court also awarded Defendant-Appellee, the prevailing party, the reasonable attorney's fees to which she was entitled under California's anti-SLAPP statute. JA278.

The district court was correct to apply the California anti-SLAPP statute's fee-shifting provision. The California anti-SLAPP's fee-shifting provision does

not conflict with the Federal Rules of Civil Procedure[2] and is a substantive state law. This Court has already held that a state anti-SLAPP fee-shifting provision applies in a diversity case. *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (holding that provisions in Nevada's anti-SLAPP law creating immunity from civil liability and requiring fee shifting apply in federal court). More broadly, the Supreme Court long ago recognized that state fee-shifting provisions that reflect a substantive policy are applicable in federal court. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975); *see also Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir.1993). The California anti-SLAPP law's fee-shifting provision therefore must apply in federal court.

Contrary to Plaintiff-Appellant's argument, this Court need not determine whether the California anti-SLAPP statute's motion-to-strike provision applies in federal court, because the district court properly dismissed the action under Rule 12(b)(6). But if the Court does reach that issue, it should hold that the motion-to-strike provision applies in federal court. As the United States Court of Appeals for the Ninth Circuit has explained, the motion-to strike provision complements, rather than conflicts with, the Federal Rules. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir.1999). And the motion-to-strike

---

[2]      Hereinafter the "Federal Rules" or "Rules."

provision is a substantive state law designed to protect the exercise of

constitutional speech rights from burdensome and frivolous litigation.  It therefore

must be applied in federal court.

**ARGUMENT**

## I.  The fee-shifting provision of California's anti-SLAPP law applies in federal court.

As a general rule, federal courts sitting in diversity apply state substantive law and federal procedural law.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1838); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996). Federal courts exercising diversity jurisdiction engage in a two-step analysis, in sequence, to determine whether to apply a state law.  *First*, courts ask whether a Federal Rule of Civil Procedure "answers the question in dispute."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).  If so, the federal rule governs, so long as it does not violate the Rules Enabling Act.  *Id. Second*, if no Federal Rule answers the question in dispute, the federal court must determine whether the state law is substantive within the meaning of *Erie*.  *Id.*  In doing so, it asks whether the state statute seeks to protect important substantive interests.  In making that determination, the court looks to the "twin aims" of Erie in determining whether a state law is substantive: "the discouragement of forum shopping and the avoidance of the inequitable administration of the laws." *Hannah v. Plumer*, 380 U.S. 460, 468 (1965).

Based on this two-step analysis, this Court should affirm the district court's determination that the California anti-SLAPP statute's fee-shifting provision does

not conflict with any Federal Rule, is a substantive entitlement to fees under *Erie*,

and therefore applies regardless of whether a libel plaintiff files her claims in state

or federal court.

    A.    <u>The fee-shifting provision does not conflict with the Federal Rules.</u>

The first step in the *Shady Grove* analysis is to determine whether a federal

rule answers the question in dispute, such that it occupies the field and leaves no

room for the operation of state law. 559 U.S. at 398; *see also Walker v. Armco*

*Steel Corp.*, 446 U.S. 740, 749–50 (1980) ("The first question must therefore be

whether the scope of the Federal Rule in fact is sufficiently broad to control the

issue before the Court," creating a "direct collision" that "leave[s] no room for the

operation of [state] law.").

The question in dispute is whether the dismissal of Plaintiff-Appellant's

complaint supports a grant of Defendant-Appellees' motion for fees. No Federal

Rule answers that question. Rule 11 is most arguably relevant to this issue.[3] But

―――――――――

[3]    Rule 11 provides for sanctions, including reasonable attorney's fees, when an attorney or party violates the requirement that a pleading, motion, or other paper presented to the court:

    (1) [] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

Rule 11 addresses a different question than mandatory fee shifting under the

California anti-SLAPP statute.  Rule 11 answers the question of whether *punitive*

*sanctions* should be imposed for submitting a filing that violates Rule 11's

requirements.  In contrast, the California fee-shifting provision compensates the

prevailing party for litigation costs incurred because of a frivolous lawsuit.  *Cf.*

*Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019) (holding that a Georgia law

allowing parties to recover fees where the opposing party had presented a frivolous

claim or defense answers a different question than Rule 11).  Whereas Rule 11

sanctions "must be limited to what suffices to deter repetition of the conduct or

comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4), fee

shifting under the California anti-SLAPP law is intended to "encourage continued

---

  (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

  (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.

9

participation in matters of public significance" by reimbursing defendants for the costs and fees they incur defending their speech, Cal. Civ. Proc. Code § 425.16(c)(1). Far from conflicting, the provisions complement each other and can work side by side.

B. The fee-shifting provision is substantive under *Erie*.

The California anti-SLAPP's fee-shifting provision is intended to protect substantive rights. The statute aims to "encourage continued participation in matters of public significance" and seeks to prevent such participation from being "chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a); *see also Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 148 (2d Cir. 2013) (hereinafter *Liberty Synergistics I*) (noting that California's anti-SLAPP law reflects a substantive policy). Fee-shifting is a vital part of this substantive protection for SLAPP defendants, because it is the only way to reliably thwart one of the main goals of a SLAPP—forcing the target to bear the significant costs of defending a lawsuit.

In addition, application of the fee-shifting provision in federal court is essential to avoiding forum shopping and promoting equitable administration of the laws. Indeed, the Ninth Circuit concluded that the California anti-SLAPP statute's fee-shifting and motion-to-strike provisions should apply in federal court to prevent forum shopping. *Newsham*, 190 F.3d at 973 ("Plainly, if the anti-

SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum."); *see also Godin v. Schencks*, 629 F.3d 79, 81, 91 (1st Cir. 2010) ("[W]ere [Maine's anti-SLAPP law] not to apply in federal court, the incentives for forum shopping would be strong: electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to . . . circumvent any liability for a defendant's attorney's fees or costs.").

Moreover, because the Ninth Circuit has held that the California anti-SLAPP statute's fee-shifting provision applies in federal courts within that circuit, failure to apply the provision in the Second Circuit would encourage forum shopping not only between state and federal courts, but also among federal courts as well. The effect of this forum-shopping would be an increased burden on federal courts in this Circuit as they processed frivolous litigation specifically designed to chill constitutionally protected speech.

    C.    This Court and its sister circuits have held that state anti-SLAPP fee-shifting provisions apply in federal courts sitting in diversity.

This Court and other circuits have recognized that federal courts sitting in diversity must apply state anti-SLAPP fee-shifting provisions. In addition, this Court and the Supreme Court have recognized that fee-shifting provisions, generally, apply in federal courts sitting in diversity.

11

The Second Circuit has previously held that a state anti-SLAPP fee-shifting provision applies in federal court. In *Adelson v. Harris*, the Court considered the applicability of Nevada's anti-SLAPP law in federal court. It held that, as a matter of first impression, the law's provisions creating civil immunity for SLAPP defendants and allowing for the recovery of fees apply in federal court.[4] 774 F.3d at 809 (2d Cir. 2014). Applying the test from *Shady Grove*, the Court held that the fee-shifting provision "is substantive within the meaning of *Erie*, since it is consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity" and "does not squarely conflict with a valid federal rule." *Id.*

Other federal courts of appeal have agreed that anti-SLAPP fee-shifting provisions apply in federal court. As already noted, *supra* Section I.B., the Ninth Circuit has held that federal courts sitting in diversity must apply the California anti-SLAPP statute, including its fee-shifting provision. *See Newsham*, 190 F.3d at

---

[4] The Nevada anti-SLAPP law's civil-immunity provision provides: "A person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Nev. Rev. Stat. § 41.650. The Nevada anti-SLAPP law's fee-shifting provision provides, in part: "The court shall award reasonable costs and attorney's fees to the person against whom the action was brought." Nev. Rev. Stat. § 41.670.

970; *see also Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013). Likewise, the United States Court of Appeals for the First Circuit in *Godin* held that Maine's anti-SLAPP statute, including its provision that "allows courts to award attorney's fees to prevailing defendants," must be applied in federal court. 629 F.3d at 81, 91.[5] And the D.C. Circuit has left open the possibility that an anti-SLAPP fee-shifting provision, standing alone, could apply in federal court. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1335 & n.3 (D.C. Cir. 2015) (although the D.C. anti-SLAPP statute's motion-to-strike provision does not apply in federal court, "[a]n interesting issue could arise if a State anti-SLAPP act did in fact exactly mirror Federal Rules 12 and 56. Would it still be preempted under *Shady Grove*? As defendants' argument suggests, the answer to that question could matter for attorney's fees and the like.").

Outside the context of anti-SLAPP statutes, both the Supreme Court and this Court have recognized that federal courts sitting in diversity should apply state fee-

---

[5] In *Godin*, the First Circuit also held that the special motion to dismiss provision in Maine anti-SLAPP statute does not conflict with the federal rules, is substantive, and is applicable in federal court. 629 F.3d at 89. However, the First Circuit's holding that the Maine anti-SLAPP's fee-shifting provision is applicable in federal court was independent from its holding regarding the special motion to dismiss provision. *Godin*, 629 F.3d at 89 n.15. With respect to the fee-shifting issue, the court's decision in *Godin* was premised in the broader proposition that state fee-shifting provisions are substantive, not procedural. *Id.*

shifting provisions.  Even before *Erie*, the Supreme Court held that a state statute requiring fee-shifting should be applied in a case removed from state court.  *People of Sioux Cty. v. Nat'l Surety Co.*, 276 U.S. 238, 243 (1928).  When a state had expressed a substantive policy through a mandatory fee-shifting provision, the Supreme Court said, "[i]t would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts."  *Id.*

Post-*Erie*, the Supreme Court confirmed this rule in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y* where it held that federal courts lack equitable discretion to award attorneys' fees in federal-question cases but contrasted that result with the "very different situation" in which "a federal court sits in a diversity case."  421 U.S. 240, 260 n.31 (1975).  The Supreme Court stated that when a federal court exercises its diversity jurisdiction to adjudicate a state-law claim, then so long as "the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."  *Id.*

In keeping with this precedent, this Court has held that "[a]ttorney's fees mandated by state statute are available when a federal court sits in diversity." *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir.1993); *see also Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir. 1987) ("State statutes providing

14

for awards of attorneys' fees and costs ordinarily apply to state law claims made in a federal court.").

In short, state fee-shifting provisions do not conflict with the federal rules and are substantive under *Erie*. Courts have therefore held repeatedly that they apply in federal court, including in anti-SLAPP cases. The same conclusion is required here: the California anti-SLAPP law's fee-shifting provision applies in federal court.

**II. The Court need not decide whether California's anti-SLAPP motion-to-strike provision applies in federal court; the fee-shifting provision of California's anti-SLAPP law applies in federal court regardless of whether the motion-to-strike provision does.**

The Second Circuit has yet to determine whether the California anti-SLAPP law's motion-to-strike provision applies in federal court. *See Liberty Synergistics Inc v. Microflo Ltd.*, 637 Fed. App'x 33, 34 n.1 (2d Cir. 2016) (hereinafter *Liberty Synergistics II*); *Ernst v. Carrigan*, 814 F.3d 116, 121–22 (2d Cir. 2016).[6] In this case, the Court should again decline to reach that question; deciding the issue is not necessary to resolve this case.

---

[6] The Court has held that Nevada's anti-SLAPP fee-shifting and civil-immunity provisions apply in federal court. *Adelson*, 774 F.3d at 809.

The district court granted Defendant-Appellee's motion to dismiss under both Rule 12(b)(6) and the California anti-SLAPP law's motion-to-strike provision, applying the same federal "plausibility" standard to both motions. JA268. Because the district court's ruling under Rule 12(b)(6) alone is sufficient to affirm the district court's dismissal of this case, there is no reason to reach the issue of whether the motion-to-strike provision applies in federal court.[7] Moreover, the applicability of the California anti-SLAPP law's fee-shifting provision in federal court and the availability of fees under the fee-shifting provision to Defendant-Appellee do not depend on the applicability of the motion-to-strike provision in federal court.

> A. The Court must analyze the fee-shifting provision independently from the motion-to-strike provision to determine whether it applies in <u>federal court.</u>

The determination of whether the California anti-SLAPP statute's fee-shifting provision applies in federal court is separate from the question of whether the motion-to-strike provision applies. The two-part *Shady Grove* analysis requires considering each provision of an anti-SLAPP law separately to determine whether it conflicts with the Federal Rules.

---

[7] However, if the Court decides to reach this issue, it should hold that the California anti-SLAPP motion-to-strike provision applies in federal court. *See infra* Section III.

In *Adelson*, this Court separately analyzed two individual provisions of Nevada's anti-SLAPP law, one creating civil immunity for SLAPP defendants and the other allowing for the recovery of fees, to determine whether each provision applies in federal court. 774 F.3d at 809. The Court did not consider the applicability of the Nevada anti-SLAPP statute as a whole, but rather focused on "the specific state anti-SLAPP provisions applied by the district court" in that case, ultimately holding that both the civil-immunity provision and the fee-shifting provision apply. *Id.* The Court also declined to address the applicability in federal court of a third part of the Nevada anti-SLAPP law, a provision barring discovery upon the filing of an anti-SLAPP motion. *Id.*

Likewise, the Ninth Circuit has recognized that different provisions of the California anti-SLAPP statute must be analyzed individually in determining whether they apply in federal court, holding that some aspects of the California anti-SLAPP statute apply in federal court while others do not. *Compare Newsham*, 190 F.3d at 970 (holding that the motion-to-strike and fee-shifting provisions apply in federal court), *with Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) (holding that the discovery-staying provision in Cal. Civ. Proc. Code § 425.16(g) cannot apply in federal court). The applicability of the fee-shifting provision in federal court does not, therefore, depend on the applicability of the motion-to-strike provision in federal court.

17

B.  The California anti-SLAPP law does not require that the motion-to-strike and fee-shifting provisions be applied together.

In addition, Defendant-Appellee is entitled to fees under the California anti-SLAPP's fee-shifting provision even if the Court does not address whether the motion-to-strike provision applies in federal court.

The fee-shifting provision provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal Civ. Proc. Code § 425.16(c)(1).  As the district court correctly recognized, JA278, Rule 12(b)(6)'s plausibility standard sets a lower bar for a complaint to survive a motion to dismiss than the California anti-SLAPP motion to strike's probability standard.  Thus, any claim the district court dismissed under Rule 12(b)(6) also would have been dismissed under the motion-to-strike provision, provided it fits within the California anti-SLAPP law's coverage.  For the purposes of the state fee-shifting provision, then, dismissal of the complaint under Rule 12(b)(6) necessarily satisfies the condition precedent that the defendant must prevail on a motion to strike in order to recovery attorney's fees under the California anti-SLAPP fee-shifting provision.  Cal. Civ. Proc. Code § 425.16(c)(1).

Amici are aware that the United States Court of Appeals for the Fifth Circuit recently stated in a footnote that its decision that the motion-to-strike provision in the Texas Citizen Participation Act ("TCPA") does not apply in federal court was

18

also fatal to the applicability of the TCPA's fee-shifting provision in that case, as the TCPA allowed for the recovery of fees only in cases dismissed "under this chapter." *Klocke v. Watson*, 936 F.3d 240, 247 n.6 (5th Cir. 2019); *see also* Tex. Civ. Prac. & Rem. Code § 27.009(a). However, *Klocke* was decided under a different statute, with different text, and a different statement of purpose than the California anti-SLAPP law. *See* Cal. Civ. Proc. Code § 425.16(a) (stating that the California ant-SLAPP statute "shall be construed broadly"). And respectfully, the Fifth Circuit's conclusion is misguided, because it fails to afford adequate deference to Texas's substantive interests in protecting the exercise of First Amendment rights, as enacted through the TCPA. In recognition of those state interests, federal courts should apply state substantive laws like the California anti-SLAPP statute to the maximum extent possible, consistent with the Federal Rules. *See Shady Grove*, 559 U.S. at 418–19 (Stevens, J., concurring).

**III.  Though the Court need not decide whether California's anti-SLAPP motion-to-strike provision applies in federal court, if the Court reaches that question, it should hold that it does.**

A.  This Court's precedent suggests that the California anti-SLAPP law's motion-to-strike provision applies in federal court.

In *Adelson*, this Court reviewed the dismissal and fee award, under the Nevada anti-SLAPP statute, in a defamation action brought by casino owner Sheldon Adelson against the National Jewish Democratic Counsel and several of

19

its members for statements made online and in a press release. The Court held that Nevada's anti-SLAPP fee-shifting and civil-immunity provisions apply in federal courts sitting in diversity. 774 F.3d at 809. It reached this conclusion because it found that each provision "is substantive within the meaning of *Erie*, since it is consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity" and "does not squarely conflict with a valid federal rule." *Id.* In short, the Court found that these provisions "seem to us unproblematic." *Id.*

In *Liberty Synergistics I*, the Court untangled a complex choice-of-laws issue in a case that had changed venues twice—removed from California state court to a federal court in California and then transferred to a federal court in New York—by holding that even if the California anti-SLAPP law were substantive for the purposes of federal choice of laws under *Erie*, the statute could still be procedural for the purposes of state choice of laws. *Id.* at 157. Although the Court assumed without deciding that the California anti-SLAPP law is substantive for federal purposes under *Erie,* statements in the opinion indicated that the Court agreed with that conclusion. 718 F.3d at 148 ("California's anti-SLAPP rule reflects a substantive policy favoring the special protection of certain defendants from the burdens of litigation because they engaged in constitutionally protected activity.").

B.      The California anti-SLAPP's motion-to-strike provision does not conflict with the Federal Rules.

Applying the two-step analysis required by *Shady Grove* to the California anti-SLAPP's motion-to-strike provision leads to the same conclusion as that reached by the Court in *Adelson* and *Liberty Synergistics I*.  Amici agree with Defendant-Appellee that this Court should follow the Ninth Circuit's determination that no conflict exists between the California anti-SLAPP law's motion-to-strike provision and Rule 12 or Rule 56.  *See* Def.-Appellee's Br. 52–53 (citing *Newsham,* 190 F.3d at 972–73).  As the Ninth Circuit first recognized in *Newsham*, "there is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims."  *Id.* And the anti-SLAPP statute "is crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'"  *Id.*

The question in dispute when considering an anti-SLAPP motion to strike is whether a complaint should be dismissed because the plaintiff has filed a frivolous claim targeting the defendant's protected speech activity.  That is different than the questions posed by Rule 12, which addresses whether a complaint states a plausible claim on which relief can be granted, or by Rule 56, which looks at whether, following discovery, there remains a dispute of material fact requiring a

21

trial.  As compared to Rules 12 and 56, the anti-SLAPP motion to strike "serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech."  *Godin*, 629 F.3d at 89.  "California's anti-SLAPP statute, by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules."  *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring in the denial of rehearing en banc, joined by Callahan, Fletcher, and Gould, JJ.).

The Supreme Court's decision in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), is instructive.  There, the Supreme Court held that a New Jersey statute requiring certain plaintiffs to post a bond in shareholder derivative suits, in contemplation of possible fee shifting, could be enforced alongside former Rule 23 (now Rule 23.1).  *Id.* at 557.  Although this state law imposed onerous requirements on plaintiffs in excess of those provided by the federal rules, the Supreme Court recognized that the federal rule set forth a non-exclusive set of minimum requirements for maintaining a suit to which the state could add on in

furtherance of substantive policies.  So too does the California anti-SLAPP law's

motion-to-strike provision supplement Rules 12 and 56.[8]

> C.  The California anti-SLAPP's motion-to-strike provision is substantive under *Erie*.

The California motion-to-strike provision is substantive because it is

essential to the statute's purpose of "encourag[ing] continued participation in

matters of public significance" in the face of "a disturbing increase in lawsuits

brought primarily to chill the valid exercise of the constitutional rights of freedom

of speech and petition for the redress of grievances."  Cal Civ. Proc. Code

§ 425.16(a); *see also Liberty Synergistics I*, 718 F.3d at 148.  And, just as with the

fee-shifting provision, failing to apply the motion-to-strike provision in the Second

Circuit would undermine the twin aims of *Erie*, incentivizing forum shopping

between both federal and state court and between federal courts in different

circuits.  *See Newsham,* 190 F.3d at 973 ("Plainly, if the anti-SLAPP provisions are

---

[8]  The United States Court of Appeals for the Eleventh Circuit has attempted to distinguish *Cohen* by observing that the state law at issue in that case "was designed only to protect against 'strike suits' that were 'brought not to redress real wrongs, but to realize upon their nuisance value.'"  *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1354 (11th Cir. 2018) (quoting *Cohen*, 337 U.S. at 548).  But this discussion in *Carbone* perfectly describes anti-SLAPP statutes.  The very purpose of anti-SLAPP laws is to protect speakers from frivolous suits intended to harass them.  And if a state statute designed to prevent strike suits could work in harmony with former Rule 23, a law with the same purpose can just as easily complement Rules 12 and 56.

held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum.").  The California anti-SLAPP law's motion-to-strike provision is thus substantive within the meaning of *Erie* and should apply in federal court.

D. This Court should decline to follow the analysis of other federal circuit courts that have concluded that state anti-SLAPP dismissal <u>provisions do not apply in federal court.</u>

Amici are aware of the circuit split on whether anti-SLAPP statutes, when used for their dismissal provisions, should be applied in federal courts.  The First (*Godin*, 629 F.3d 79 (applying Maine law)), Second (*Adelson*, 774 F.3d 803 (Nevada law)), and Ninth Circuits (*e.g.*, *Newsham*, 190 F.3d 963 (California law)) have held that federal courts should apply these state statutes.  But the D.C. Circuit (*Abbas*, 783 F.3d 1328 (declining to apply D.C. law)), Fifth Circuit (*Klocke*, 936 F.3d 240 (Texas law); *but see Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 169 (5th Cir. 2009) (applying Louisiana law), Tenth Circuit (*Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018) (New Mexico law)), and Eleventh Circuit (*Carbone*, 910 F.3d 1345 (Georgia law)) have each held that at least one state's anti-SLAPP law, when used to dismiss claims, should not be applied by their district courts.  The D.C. Circuit, Fifth Circuit, and Eleventh Circuit have each found that the motion to dismiss provision of an anti-SLAPP statute conflicts with Rules 12 and 56.  *See Abbas*, 783 F.3d at 1335;

24

*Klocke*, 936 F.3d at 247; *Carbone*, 910 F.3d at 1354. Respectfully, these cases are wrongly decided, and this Court should not follow them.

In each of these cases, at the first step of the *Shady Grove* analysis, the federal appellate courts posed the questions that Rules 12 and 56 answer at an extremely high level of generality: What are the circumstances in which a case can be terminated before trial? *See, e.g.*, *Abbas*, 783 F.3d at 1333–34 ("Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial."). This framing imbues Rules 12 and 56 with an expansive construction, leaving considerably less room for substantive state laws to operate in federal court. The resulting displacement of state law is contrary to *Erie*'s goal of giving state interests greater purchase in federal diversity cases. As Judge Wardlaw put it, framing the question in this expansive way "turns *Shady Grove*'s lens into a kaleidoscope." *Makaeff*, 736 F.3d at 1182 (Wardlaw, J., concurring).

In addition, the analysis in *Abbas* focused not on whether the D.C. anti-SLAPP law and the Federal Rules truly conflict, but rather on whether they are exactly the same. *See Abbas*, 783 F.3d at 1334. In *Abbas,* the D.C. Circuit listed several differences between the standards and procedures created by the D.C. anti-SLAPP law and the Federal Rules. *Id.* But this is irrelevant, because the test under *Shady Grove* is not whether the state law and the Federal Rule are identical. If it

25

were, no state law would ever apply in federal court.  Instead, this Court's analysis should properly focus on whether the differing standards created by the state law and the federal rule can coexist harmoniously without disrupting the operation of the Federal Rule.

A close examination of the Supreme Court's divided opinion in *Shady Grove* demonstrates that, if anything, the Federal Rules should be construed narrowly to leave space in federal courts for substantive state policies.  In *Shady Grove*, Justice Stevens and three other justices joined in the first part of the opinion of the Court authored by Justice Scalia, in which the Court explained the two-step analysis for determining whether a state law should be applied by a federal court sitting in diversity.  *Shady Grove*, 559 U.S. at 398.  But Justice Stevens's separate concurrence, joined in relevant part by the four dissenting justices, also created a majority for the premise that when a state law "is part of a State's framework of substantive rights or remedies," it is problematic under the Rules Enabling Act for a federal rule to displace the state law, even if that state law is nominally procedural.  *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring).  In such a situation, the federal court should endeavor to read the Federal Rule narrowly to avoid the conflict.  *Id.* at 422–23.  That is, "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider

26

whether the rule can reasonably be interpreted to avoid that impermissible result."

*Id.*

Because California's anti-SLAPP statute, including the motion-to-strike provision, is a substantive remedy for SLAPP defendants, this Court should interpret Rules 12 and 56 more narrowly than the D.C. Circuit, Fifth Circuit, and Eleventh Circuit have interpreted them. Under this appropriate reading of Rules 12 and 56, the California anti-SLAPP statute's motion-to-strike provision operates in tandem with the Federal Rules, rather than conflicting with them.

## CONCLUSION

For the foregoing reasons and those set forth in Defendant-Appellee's brief, *amici curiae* urge this Court to affirm the decision below.

Respectfully submitted,

/s/ Bruce D. Brown
Bruce D. Brown
*Counsel of Record*
Katie Townsend
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Telephone: (202) 795-9300

Dated:        February 19, 2020
                  Washington, D.C.

**CERTIFICATE OF COMPLIANCE**

I, Bruce D. Brown, do hereby certify that the foregoing brief of *amici curiae*:

1) Complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,990 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-processing system used to prepare the brief; and

2) Complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Times New Roman font.

/s/ Bruce D. Brown

Bruce D. Brown
*Counsel of Record*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

Dated:    February 19, 2020
          Washington, D.C.

# APPENDIX A

Descriptions of *amici*:

**The Reporters Committee for Freedom of the Press** is a voluntary, unincorporated association of reporters and editors that works to defend the First Amendment rights and freedom of information interests of the news media.

**ALM Media, LLC** publishes over 30 national and regional magazines and newspapers, including *The American Lawyer*, *The National Law Journal*, *New York Law Journal* and *Corporate Counsel*, as well as the website Law.com. Many of ALM's publications have long histories reporting on legal issues and serving their local legal communities. ALM's *The Recorder*, for example, has been published in northern California since 1877; *New York Law Journal* was begun a few years later, in 1888. ALM's publications have won numerous awards for their coverage of critical national and local legal stories, including many stories that have been later picked up by other national media.

The **Associated Press ("AP")** is a news cooperative organized under the Not-for-Profit Corporation Law of New York. The AP's members and subscribers include the nation's newspapers, magazines, broadcasters, cable news services and Internet content providers. The AP operates from 280 locations in more than 100 countries. On any given day, AP's content can reach more than half of the world's population.

**BuzzFeed** is a social news and entertainment company that provides shareable breaking news, original reporting, entertainment, and video across the social web to its global audience of more than 200 million.

**The California News Publishers Association** ("CNPA") is a nonprofit trade association representing the interests of over 400 daily, weekly and student newspapers and news websites throughout California.

**Californians Aware** is a nonpartisan nonprofit corporation organized under the laws of California. Its mission is to foster the improvement of, compliance with and public understanding and use of, the California Public Records Act and other guarantees of the public's rights to find out what citizens need to know to be truly self-governing, and to share what they know and believe without fear or loss.

**The E.W. Scripps Company** serves audiences and businesses through local television, with 60 television stations in 42 markets. Scripps also owns Newsy, the next-generation national news network; podcast industry leader Stitcher; national broadcast networks Bounce, Grit, Escape, Laff and Court TV; and Triton, the global leader in digital audio technology and measurement services. Scripps serves as the long-time steward of the nation's largest, most successful and longest-running educational program, the Scripps National Spelling Bee.

**First Look Media Works, Inc.** is a non-profit digital media venture that produces The Intercept, a digital magazine focused on national security reporting.

First Look Media Works operates the Press Freedom Defense Fund, which provides essential legal support for journalists, news organizations, and whistleblowers who are targeted by powerful figures because they have tried to bring to light information that is in the public interest and necessary for a functioning democracy.

**Gannett** is the largest local newspaper company in the United States. Our 260 local daily brands in 46 states and Guam — together with the iconic USA TODAY — reach an estimated digital audience of 140 million each month.

**The Investigative Reporting Workshop**, based at the School of Communication (SOC) at American University, is a nonprofit, professional newsroom. The Workshop publishes in-depth stories at investigativereportingworkshop.org about government and corporate accountability, ranging widely from the environment and health to national security and the economy.

**The Media Institute** is a nonprofit foundation specializing in communications policy issues founded in 1979.  The Media Institute exists to foster three goals: freedom of speech, a competitive media and communications industry, and excellence in journalism.  Its program agenda encompasses all sectors of the media, from print and broadcast outlets to cable, satellite, and online services.

**MPA – The Association of Magazine Media**, ("MPA") is the industry association for magazine media publishers. The MPA, established in 1919, represents the interests of close to 100 magazine media companies with more than 500 individual magazine brands. MPA's membership creates professionally researched and edited content across all print and digital media on topics that include news, culture, sports, lifestyle and virtually every other interest, avocation or pastime enjoyed by Americans. The MPA has a long history of advocating on First Amendment issues.

**The National Freedom of Information Coalition** is a national nonprofit, nonpartisan organization of state and regional affiliates representing 45 states and the District of Columbia. Through its programs and services and national member network, NFOIC promotes press freedom, litigation and legislative and administrative reforms that ensure open, transparent and accessible state and local governments and public institutions.

**The National Press Photographers Association** ("NPPA") is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing and distribution. NPPA's members include television and still photographers, editors, students and representatives of businesses that serve the visual journalism industry. Since its founding in 1946, the NPPA has vigorously

promoted the constitutional rights of journalists as well as freedom of the press in all its forms, especially as it relates to visual journalism.

**The New York Times Company** is the publisher of *The New York Times* and *The International Times*, and operates the news website nytimes.com.

**The News Leaders Association** was formed via the merger of the American Society of News Editors and the Associated Press Media Editors in September 2019. It aims to foster and develop the highest standards of trustworthy, truth-seeking journalism; to advocate for open, honest and transparent government; to fight for free speech and an independent press; and to nurture the next generation of news leaders committed to spreading knowledge that informs democracy.

**POLITICO** is a global news and information company at the intersection of politics and policy. Since its launch in 2007, POLITICO has grown to nearly 300 reporters, editors and producers. It distributes 30,000 copies of its Washington newspaper on each publishing day and attracts an influential global audience of more than 35 million monthly unique visitors across its various platforms.

**Reveal from The Center for Investigative Reporting**, founded in 1977, is the nation's oldest nonprofit investigative newsroom. Reveal produces investigative journalism for its website https://www.revealnews.org/, the Reveal national public radio show and podcast, and various documentary projects. Reveal often works in collaboration with other newsrooms across the country.

**The Society of Environmental Journalists** is the only North-American membership association of professional journalists dedicated to more and better coverage of environment-related issues.

**Society of Professional Journalists** ("SPJ") is dedicated to improving and protecting journalism.  It is the nation's largest and most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior.  Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry, works to inspire and educate the next generation of journalists and protects First Amendment guarantees of freedom of speech and press.

**Univision Communications Inc.** (UCI) is the leading media company serving Hispanic America.  UCI is a leading content creator in the U.S. and includes the Univision Network, UniMás and Univision Cable Networks.

**Vox Media, LLC** owns New York Magazine and several web sites, including Vox, The Verge, The Cut, Vulture, SB Nation, and Eater, with 170 million unique monthly visitors.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system with a resulting electronic notice to all counsel of record on February 19, 2020.

Dated: Feb. 19, 2020                    By: */s/ Bruce D. Brown*
                                        Bruce D. Brown
                                        *Counsel for Amici Curiae*